UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

| | |
|---|---|
| Christopher Linnville,<br><br>                Plaintiff,<br>vs.<br><br>RW Properties, LLC d/b/a Gallery of Homes of the Upstate<br><br>                Defendant. | Civil Action No.: 6:13-cv-00542-BHH<br><br>**Opinion and Order** |

## BACKGROUND

### 1. Facts

The Plaintiff, Christopher Linnville ("Linnville"), was employed by the defendant, RW Properties, LLC d/b/a Gallery of Homes of the Upstate ("RW Properties") from November 2008 through December 13, 2011. RW Properties sells manufactured homes and performs "setup" of those homes. (Deposition of Randal Walker 6:7-24, ECF No. 33-2.) "Setup" involves delivering a manufactured home, securing it to the property, running sewer and water lines, installing vinyl siding, sheetrock, crown molding, and seam carpet, and then conducting a walkthrough to ensure that everything is ready for the customer. (*Id.* at 7:2-21.) Additionally, RW Properties also provides services when claims are made on the warranties for the homes. (*Id.* 8:1-8.)

During Linnville's employment, he worked as a service technician, performed lead trim and "finish out" work on manufactured homes, and vehicle escort duties. (Deposition of Christopher Linnville 28:16-24, ECF No. 32-3.) He was initially hired for "setup," but was subsequently moved to the "inside crew" and his primary duties appear

1

to have involved work on the interior portion of homes that were being set up. (*See* Walker Dep. 10:2-21). Randall Walker who appears to have been Linnville's boss, described his responsibilities as follows:

> [He would] lag the floors, lag the ceilings, bolt them together, align the walls on the inside, and hang the sheetrock, and then they hang the crown molding and the baseboard molding and seam the carpet. And then I have a sheetrock finisher that would come in if it was a drywall house. . . . And then Chris [Linnville] would come back afterwards, or the interior guys would come back afterwards and do fit and finish and adjust doors and make sure everything was perfect for the customer.

(*Id.* at 14:6-18). Linnville also testified that he worked in "service" handling warranty calls after houses had been set up. (*See* Linnville Dep. 24:1-12.)

Finally, Linnville testified that occasionally, he would serve as an escort, driving a small vehicle in front of the "toter" that was pulling the manufactured home. (*See id.* 29:1-7.) He estimated that he did this approximately "four times a year" and that it typically took "[a]bout a half a day, depending on the lot where the house was being transported to and the distance." (*Id.* 29:8-15.) When asked if he thought that Linnville fell under a "driver escort exemption" to the FLSA, Walker responded, "He drove an escort. That wasn't his full-time job. Most of his job was the setup and everything. He would drive occasionally, but occasionally he did drive a dually with – pulling an F-350; but it wasn't a significant part of his workload." (Walker Dep. 29:18-23.) Walker testified that he recalled Linnville driving approximately four times per month, but indicated that there would be no record showing when he was driving as opposed to performing other duties. (*Id.* 29:24 – 30:14.)

It appears that sometime around December of 2009, the defendant altered the way that it compensates its employees, changing from hourly pay, under which it

presumably paid its employees overtime, to daily pay without overtime (or with some overtime calculated into the daily rate) (*Id.* 23:8-22.)  The plaintiff alleges that he questioned the defendant about overtime and was told if he did not like it he could quit. The plaintiff was terminated in December of 2011, but waited over a year to file this action.

### 2. Procedural History

Plaintiff filed his initial complaint on March 1, 2011 (ECF No. 1.)  The defendant moved to dismiss for failure to state a claim (ECF No. 7), and the plaintiff filed an amended complaint (ECF No. 9.)  The defendant then filed an Amended motion to dismiss (ECF No. 13) raising some of the same arguments about the statute of limitations that are raised in the motion at hand.  On October 9, 2013, Judge Lewis, to whom the case was previously assigned, issued an order denying the motions to dismiss.  The defendant filed a motion for summary judgment (ECF No. 32) on May 27, 2014, and the plaintiff responded in opposition (ECF No. 33.)  The defendant did not file a reply to the response in opposition.  On June 27, 2014, the case was transferred to the undersigned.  On August 20, 2014, the Court granted the parties joint motion to stay the case pending resolution of the motion for summary judgment, which is now before this Court.

## STANDARD OF REVIEW

A court should grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a).  In deciding whether a genuine issue of material fact exists, the evidence of the non-moving party is to be believed and all justifiable

inferences must be drawn in his favor. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).  The moving party bears the initial burden of demonstrating that summary judgment is appropriate; if the party moving for summary judgment carries its burden, then the burden shifts to the non-moving party to set forth specific facts showing that there is a genuine issue for trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 23 (1986).

A party asserting that a fact is genuinely disputed must support the assertion by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56 (c)(1)(A).  A litigant "cannot create a genuine issue of material fact through mere speculation or the building of one inference upon another." *Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir.1985).  "Mere unsupported speculation . . . is not enough to defeat a summary judgment motion."  *Ennis v. National Ass'n of Bus. & Educ. Radio, Inc.,* 53 F.3d 55, 62 (4th Cir. 1995).

"[W]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, disposition by summary judgment is appropriate." *Teamsters Joint Council No. 83 v. Centra, Inc.*, 947 F.2d 115, 119 (4th Cir.1996).  "Summary judgment is proper only when it is clear that there is no dispute concerning either the facts of the controversy or the inferences to be drawn from those facts." *Pulliam Inv. Co. v. Cameo Props.*, 810 F.2d 1282, 1286 (4th Cir.1987).  The court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury

4

or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52.

## DISCUSSION

The defendant's motion for summary judgment raises two issues: (1) whether the plaintiff is subject to the Motor Carrier's Exemption and consequently exempt from the overtime provision of the Fair Labor Standards (FLSA); and (2) whether the plaintiff has presented sufficient evidence of a "willful violation" to withstand summary judgment on his claims from the period prior to March 3, 2011. The Court will address each of these issues in turn.[1]

### 1. The Motor Carrier's Exemption

The defendant argues that because plaintiff repaired mobile homes, which are defined as "motor vehicles," he is exempted as a driver, loader, or mechanic. MSJ at 6. The Motor Carrier Act (MCA), which was passed by Congress in 1935, authorized the Interstate Commerce Commission (I.C.C.), and subsequently the Secretary of Transportation, to regulate the qualifications and working hours for those employed by common carriers whose duties affected the safety of the carrier. *See Troutt v. Stavola Bros.*, 107 F.3d 1104, 1106 (4th Cir. 1997). When the FLSA was enacted three years later, Congress exempted employees whose hours could be regulated under the Motor Carrier Act. *Id.*

It is well established that "[e]xemptions to the FLSA 'are to be narrowly construed against the employers seeking to assert them and their application limited to those establishments plainly and unmistakably within their terms and spirit.'" *Veney v. John*

---

[1] With regard to the defendant's final argument that overtime pay was calculated into the daily rate paid to the defendant, the Court finds that genuine issues of material fact preclude summary judgment on this basis.

5

*W. Clarke, Inc.*, No. CIV. JKB-13-2410, 2014 WL 2925260, at *5 (D. Md. June 27, 2014) (quoting *Arnold v. Ben Kanowsky, Inc.,* 361 U.S. 388, 392 (1960)).  Moreover, it is the employer who bears the burden of establishing the exemption, *see Clark v. J.M. Benson Co.*, 789 F.2d 282, 286 (4th Cir. 1986), and exemptions should be "strictly limited to those 'clearly and plainly within its terms and spirit.'"  *Shaliehsabou v. Hebrew Home of Greater Washington, Inc.*, 369 F.3d 797, 799 (4th Cir. 2004) (quoting *A.H. Phillips, Inc.,* 324 U.S. 490, 493 (1945)).

The defendant argues that the plaintiff should be considered an exempt employee; however, for the reasons discussed below, the Court disagrees.  First, as far as the Court can tell, the defendant has not submitted evidence sufficient to establish that it transports property in interstate commerce such that its employees might fall within the MCA exception.  The fact that the plaintiff has alleged that the defendant is "engaged in interstate commerce, as is sufficient to trigger coverage under the FLSA, is insufficient to serve as the basis for the MCA exemption [because] [t]he latter is premised specifically upon transportation of property in interstate commerce."  *Veney*, 2014 WL 2925260, at *6 (comparing 29 U.S.C. §§ 203(b), (s)(1)(A), 207(a)(1), *with* 49 U.S.C. § 13501).  The relevant definition under the FLSA is extremely broad and requires only that employees be engaged in interstate commerce; produce goods for use in interstate commerce; or handle, sell, or work with goods that have been moved or made in interstate commerce.  *See* 9 U.S.C. §§ 203(b), (s)(1)(A), 207(a)(1).  By contrast, the MCA effectively requires that the motor carrier transport "passengers, property, or both" across state lines.  *See* 49 U.S.C. § 13501.

The Fourth Circuit has held that in determining whether the Secretary of Transportation has the authority to regulate a carrier, a court should look not only at the business that the employer conducts, but also at the business it solicits. *See Brennan v. Schwerman Trucking Co. of Virginia*, 540 F.2d 1200, 1203 (4th Cir. 1976). Here, however, the defendant has not directed the Court to information regarding whether it transports property or persons across state lines or whether it solicits out-of-state business, and therefore the Court cannot find as a matter of law that the MCA exemption applies.

Second, even if the defendant had demonstrated that it transports goods across state lines, the Court would still have to make an individualized determination that the plaintiff's work fell within one of four categories – driver, driver's helper, loader, or mechanic – and that it directly affected the safety of operation of motor vehicles on the public highways in transportation in interstate or foreign commerce as defined by the MCA. 29 C.F.R. § 782.2(b)(2); *see also Troutt v. Stavola Bros.*, 107 F.3d 1104, 1107 (4th Cir. 1997) ("Motor carrier employees whose activities affect the safety of operation of the motor carrier are covered by the Motor Carrier Act and exempt from regulation under FLSA; but those whose activities do not affect the safety of operation are not governed by the Motor Carrier Act, and not exempt from the wage and hour provisions of FLSA."). While employees "need not devote all or even the majority of their time to safety-affecting activities," the MCA does not exempt employees whose "activities may be so 'limited,' 'trivial,' 'casual,' or 'occasional' as to be *de minimis* and so not affect 'safety of operation.'" *Troutt*, 107 F.3d at 1107, 1109 (quoting *Pyramid Motor Freight Corp. v. Ispass,* 330 U.S. 695, 708 (1947)).

7

The defendant argues that the plaintiff was a driver, a loader, and a mechanic, and while it cites legal authorities discussing each of these categories, it provides very little in the way of analysis connecting the facts regarding the plaintiff to these categories. The defendant appears to be relying on the fact that "[t]he handling of mobile homes, modular homes and motor vehicles are all dealt with the same and through the South Carolina Department of Motor Vehicles." (ECF No. 32 at 5.) Thus the defendant argues that the plaintiff qualifies as a "driver," "loader," or "mechanic" by virtue of the fact that he serviced mobile homes, "which are defined as 'motor vehicles.'" (*Id.* at 6.)

The defendant has directed the Court to no authority to support its assumption that the state's classification of mobile homes as vehicles is dispositive for purposes of the MCA and FSLA. In *Snell v. Quality Mobile Home Brokers Inc.*, 424 F.2d 233 (4th Cir. 1970), the Fourth Circuit considered the applicability of a provision under 29 U.S.C. § 213(b)(10) that exempted "any salesman, partsman, or mechanic primarily engaged in selling or serving automobiles, trailers, trucks, farm implements, or aircraft if employed by a nonmanufacturing establishment primarily engaged in the business of selling such vehicles to ultimate purchasers." The defendant/appellant/employer argued that a mobile home fell within the definition of a "trailer" and that the plaintiff should thus be classified as a mechanic. Noting that "exemptions from the ACT are to be narrowly construed, the Fourth Circuit rejected the argument and concluded that Congress "intended to bring within the exemption mechanics who performed the type of work on trailers that other mechanics performed on automobiles, trucks, farm implements, or aircraft." *Snell*, 424 F.2d at 236.

8

Similarly, this Court finds that given Linnville's primary duties, which appear to have involved servicing the interior portions of mobile homes, he should not be classified as a "driver," "loader," or "mechanic."  Furthermore, Linnville's primary duties do not appear to have directly affected the safety of operation of motor vehicles on the public highways in transportation in interstate or foreign commerce as defined by the MCA.  Accordingly, the Court concludes that Linnville's work servicing mobile homes does not justify classifying him as an exempt employee.

The fact that Linnville occasionally served as an escort driver for the delivery of mobile homes is also insufficient for the Court to classify him as an exempt employee. Construing the facts in the light most favorable to the non-moving party, Linnville only served as an escort driver around four times a year, for approximately half a day at a time, which the Court finds to be *de minimis*.  Moreover, there is no evidence in the record regarding whether Linnville ever travelled in interstate commerce as defined by the MCA or was reasonably expected to drive across state lines.  Given the record, the Court cannot conclude as a matter of law that Linnville was an exempt employee.  *See Sturm v. CB Transp., Inc.*, 943 F. Supp. 2d 1102, 1112 (D. Idaho 2013) ("An employer can establish that the Motor Carrier exemption defense applies by showing that (1) a driver can reasonably be expected to drive across state lines, or (2) the driver hauled goods in the practical continuity of movement in interstate commerce.") (citations and quotation marks omitted).

2. **Willful Violation**

The defendant's second argument is that Linnville has not set forth sufficient evidence to demonstrate that the defendant's alleged violation of the FSLA was "willful."

9

"The FLSA provides two potential limitations periods. For non-willful FLSA violations, a two-year statute of limitations applies," but "[w]hen the violation is willful, a three-year statute of limitations applies." *Desmond v. PNGI Charles Town Gaming, L.L.C.*, 630 F.3d 351, 357 (4th Cir. 2011) (citing 29 U.S.C. § 255(a)). If the defendant is correct that Linnville cannot establish a willful violation, the two-year statute of limitations will apply, and Linnville will only be able to recover, if at all, for the period between March 3, 2011 and December 13, 2011 because he did not file his action until March 1, 2013. Thus, while granting summary judgment on the issue of willfulness would reduce the plaintiff's potential recovery, it will not resolve the case altogether.

A violation is considered willful if the defendant "either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the [FLSA]." *Desmond v. PNGI Charles Town Gaming, L.L.C.*, 630 F.3d 351, 358 (4th Cir. 2011) (quoting *McLaughlin v. Richland Shoe Co.,* 486 U.S. 128, 133 (1988)). "The employee bears the burden of proof when alleging a violation is willful." *Desmond*, 630 F.3d at 358. While the "willfulness" of a violation is "ultimately a question of fact, a plaintiff must present sufficient evidence of willfulness to survive summary judgment." *Hantz v. Prospect Mortgage, LLC*, 11 F. Supp. 3d 612, 617 (E.D. Va. Feb. 5, 2014) (citing *Pignataro v. Port Authority,* 593 F.3d 265, 273 (3d Cir. 2010)). "Courts have found employers willfully violated FLSA where they ignored specific warnings that they were out of compliance, destroyed or withheld records to block investigations into their employment practices, or split employees' hours between two companies' books to conceal their overtime work." *Hantz*, 11 F. Supp. 3d at 617.

10

The evidence of willfulness in this case is somewhat limited, but the Court concludes that it could be sufficient for a jury to find for the plaintiff on the issue of willfulness. It appears that the defendant was initially paying its employees hourly and (presumably) complying with the overtime requirements of the FLSA. In December of 2009, the defendant apparently switched to daily payments, which Walker alleged were standard in the industry. (Walker Dep. 30:15 – 31:4.) Additionally, Walker alleged that he calculated seven hours of overtime per week into each employee's daily rate. (*Id.* 23:8-22). Linnville alleges that he inquired about the change in the method of payment, but was told that if he didn't like it, he could quit. He also has alleged that he regularly worked 50-60 hours a week. (Linnville Dep. Am. Compl. ¶ 7.)

While this evidence certainly does not allow the Court to determine that the violation was willful at this stage, there could be cases where an employer had committed a willful violation where the evidence would be no more substantial than what has been presented here. Much turns on credibility determinations about issues such as how many hours Linnville typically worked, what Walker knew about the hours that Linnville and other employees were working, and whether Walker had a good faith basis for believing that his employees were exempt. These credibility determinations are for the jury, and the Court thus concludes that summary judgment should be denied. *See Lyle v. Food Lion, Inc.*, 954 F.2d 984, 987-88 (4th Cir. 1992) (upholding the district court's finding that the issue of willfulness "hinge[d] on a credibility determination").

## CONCLUSION

For the reasons set forth above, the defendant's motion for summary judgment (ECF No. 32) is denied.

**IT IS SO ORDERED.**

/s/ Bruce Howe Hendricks
United States District Judge

January 15, 2015
Greenville, South Carolina